**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

ROBERT P. JONES,          )
                                 )

    Plaintiff-below/Appellant,   )
                                 )

        v.                    )    C.A. N15A-10-011 AML
                                 )

DELAWARE TRANSIT        )
CORPORATION,           )
                                 )

    Defendant-below/Appellee.  )

Submitted: July 20, 2016
Decided: October 13, 2016

**ORDER**

**On appeal from the Court of Common Pleas: AFFIRMED.**

1.     This is an appeal from a Court of Common Pleas decision granting the defendant's motion for summary judgment. The decision denied the plaintiff's claim for additional benefits under Delaware's personal injury protection statute. The plaintiff argues that the lower court incorrectly concluded that a bus, on which the plaintiff was vacuuming when he was injured, was merely the situs of his injury rather than an active accessory in causing it. For the following reasons, the Court of Common Pleas' decision is affirmed.

**FACTUAL BACKGROUND**

2.     On March 14, 2014, Plaintiff Robert P. Jones was working for Defendant Delaware Transit Corporation ("DART") cleaning a DART bus. He

was using a vacuum cleaner that, when a button on the vacuum is pushed, automatically hooks to the front door of the bus, covering the entire door.[1] On the center of the vacuum unit is a reel on which there is an air hose, which is about an inch thick and 40 feet long.[2] After the vacuum was attached to the door, Jones unraveled this hose and pulled it toward the back of the bus, intending to use it to blow trash and dirt forward, toward the vacuum.[3] While Jones was walking to the back of the bus with the hose, he allegedly injured his back and left leg when the hose got caught on the reel, jerking Jones backward.[4]

3.    On January 15, 2015, Jones sued DART for his injuries in the Court of Common Pleas, seeking personal injury protection ("PIP") benefits. Under 21 *Del. C.* § 2118, otherwise known as the PIP Statute, registered Delaware motor vehicles are required to obtain minimum insurance coverage for medical expenses and lost wages. On June 4, 2015, DART moved for summary judgment, claiming Jones's injuries did not qualify for PIP coverage under Delaware law. Oral argument was held on July 10, 2015. On September 30, 2015, the Court of

---

[1] Jones Dep. 16.

[2] *Id.* at 17, 20.

[3] *Id.* at 17-18, 20, 23-24.

[4] *Id.* at 20, 24. Jones testified that: "You feel like you're on a dog leash. You're running pretty good and all of a sudden it stops on you." *Id.* at 20.

2

Common Pleas granted DART's Motion for Summary Judgment.[5] Jones timely filed an appeal on October 15, 2015.

4. The lower court held that "the vehicle in question was not an active accessory in causing [Jones's] injury," and therefore Jones's injury was "not the type of accident encompassed by 21 *Del. C.* § 2118."[6] Applying *Kelty v. State Farm Mutual Insurance Co.*,[7] the lower court explained that "the vehicle must play an 'active role' in causing the injury" and that a "vehicle is the mere situs of an injury if the injury was in no way caused by the use or operation of the motor vehicle or if the injury did not occur by virtue of the inherent nature of using a motor vehicle."[8] The court ruled that: "Despite the fact that the vacuum attaches to the vehicle to be cleaned, [and] the accident occurred while the [Jones] was cleaning [DART's] vehicle, [Jones's] injury was in no way caused by the use or operation of that vehicle. The bus was therefore the mere situs of the injury."[9]

---

[5] *Jones v. Del. Transit Corp.*, C.A. No. CPU4-15-000259, at *2 (Del. Ct. Com. Pl. Sept. 30, 2015) (ORDER). The sole claim in Jones's complaint was for lost wages, court costs, and interest under the PIP statute. Pl.'s Opening Br. A1-A2. Although DART's motion requested "partial" summary judgment, *see id.* A57, the Court of Common Pleas' ruling resolved the entirety of Jones's claim and therefore was a final, appealable order of the court.
[6] *Jones*, C.A. No. CPU4-15-000259, at *2.
[7] 73 A.3d 926 (Del. 2013).
[8] *Id.* (citing *Sierra v. Allstate Prop. & Cas. Ins. Co.*, 2013 WL 2636043, at *2 (Del. Super. June 12, 2013) *aff'd*, 83 A.3d 738 (Del. 2014) (TABLE); *Friel v. Hartford Fire Ins. Co.*, 2014 WL 1813293, at *5 (Del. Super. May 6, 2014), *aff'd*, 108 A.3d 1225 (Del. 2015) (TABLE)) (internal quotations and brackets omitted).
[9] *Jones*, C.A. No. CPU4-15-000259, at *2.

3

## THE PARTIES' CONTENTIONS

5.   Jones contends the lower court "incorrectly determined that 21 *Del. C.* § 2118 did not apply to [Jones's] injury since the injury would not have occurred but for the existence of the vehicle because the vacuum does not function unless it is hydraulically sealed to the bus."[10] Jones argues that, under *Kelty*, the bus was an active accessory in causing his injury because "if the bus is taken out of th[e] factual scenario, there is no way the injury could have occurred."[11] Jones argues that the bus "is much more than the platform [Jones] is occupying when the injury occurs."[12] Jones contends that, for the vacuum to operate, the bus must be manipulated – for example, the bus's rear door must be left open and the bus kept running.[13] Jones further argues that "the use and operation of the specific vehicle involved in the incident (i.e., the bus) includes the cleaning of the vehicle utilizing a piece of machinery specifically designed to attach to the vehicle (i.e., the vacuum). As such, since the injury involved the use and operation of the bus occupied by [Jones], the bus cannot be considered the mere situs of the injury."[14]

6.   DART responds that the record does not support the contention that the vacuum cannot operate without the bus present, the bus running, or the bus

---

[10] Pl.'s Opening Br. 3, 11.
[11] *Id.* at 10 (citing *Kelty*, 73 A.3d 926 (Del. 2013)).
[12] Pl.'s Opening Br. 11.
[13] *Id.* at 10.
[14] *Id.* at 12; Pl.'s Reply Br. 7.

4

door being open.[15] DART argues the vacuum is "a separate unit with a separate power source and is fully functionable and operational irrespective if the bus is on or off, or even present."[16] DART contends the lower court correctly applied Delaware precedent when it held that the bus was not an active accessory in causing Jones's injury.[17]

## ANALYSIS

7. In considering an appeal from a Court of Common Pleas decision, this Court's role is to review challenged factual findings of the lower court to determine if they sufficiently are supported by the record and are the product of an orderly and logical deductive process.[18] If substantial evidence supporting the factual findings exists, this Court must accept the lower court's ruling and may not make its own factual findings, weigh evidence, or make credibility determinations.[19] As to questions of law, such as decisions regarding summary judgment,[20] this Court reviews such rulings *de novo*.[21] "A decision granting summary judgment will be affirmed if it appears that there are no genuine issues of

[15] Def.'s Resp. Br. 10-11.
[16] *Id.* at 10.
[17] *Id.* at 11.
[18] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).
[19] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[20] *Jackson v. Walgreens Corp.*, 2013 WL 2145938, at *2 (Del. Super. May 15, 2013) (citing *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 174-75 (Del. 2001)).
[21] *Downs v. State*, 570 A.2d 1142, 1144 (Del. 1990).

material fact and the moving party is entitled to judgment as a matter of law."[22] On all such questions, this Court reviews the appeal on the record and does not conduct a new trial.[23] The facts of record "must be viewed in the light most favorable to the non-moving party."[24]

8. The limited issue here is whether Jones's injury "involved a motor vehicle" within the meaning of 21 *Del. C.* § 2118. Section 2118(a)(2)(c) states: "The coverage required by this paragraph shall apply to each person occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another motor vehicle."[25] To determine whether an accident "involved a motor vehicle," the Court must analyze whether "the vehicle was an active accessory in causing the injury," meaning the bus has to be "something less than proximate cause in the tort sense and something more than . . . the mere situs of the injury."[26]

9. Similar Delaware cases provide helpful guideposts to distinguishing whether a vehicle is an active accessory or merely the situs of an injury. For example, in *Sanchez v. American Independent Insurance Co.*, the Delaware Supreme Court held that a vehicle was the mere situs of the plaintiff accidentally

---

[22] *Jackson*, 2013 WL 2145938, at *2 (citing *Newtowne Vill. Serv. Corp.*, 772 A.2d at 174-75) (internal quotations omitted).
[23] 10 *Del. C.* § 1326; Super. Ct. Civ. R. 72(g).
[24] *Williams v. Geier*, 671 A,2d 1368, 1376 (Del. 1996).
[25] 21 *Del. C.* § 2118(a)(2)(c).
[26] *Kelty*, 73 A.3d at 932.

being shot.[27] "Although [the plaintiff] was shot while he was sitting in the car, his location was the only connection between the injury and the vehicle."[28] The plaintiff "could just have easily been walking or riding a bike through the intersection when he was shot."[29] The Court concluded "there was no causal connection between [the plaintiff's] use of the vehicle and his injuries."[30]

10. Likewise, in *Friel v. Hartford Insurance Co.*, this Court held that the vehicle was not an active accessory in causing the plaintiff's injury but was the mere situs of the injury.[31] In *Friel*, the plaintiff arrived at Costco in his truck with pallets of product to deliver. While standing on the back of his truck, the plaintiff bent down to attach chains to a pallet and injured his back.[32] The chains were provided by his employer and used to attach the pallets to a forklift.[33] This Court explained that the injury occurred "after [the plaintiff] bent down to hook the chains to a pallet"; the chains "were not attached to the truck and were not a part of the truck"; and the plaintiff "picked up the chains [] at the warehouse and

---

[27] 886 A.2d 1278 (Del. 2005) (TABLE).
[28] *Id.* at *2.
[29] *Id.*
[30] *Id.* at *3.
[31] 2014 WL 1813293, at *4 (Del. Super. 2014); *see also Sierra*, 2013 WL 2636043, at *2 ("Indeed there is no particular significance to the fact that Plaintiff was touching a vehicle at the time he hurt his lower back reaching for a chain. His hand could have been touching anything and the injury would still have occurred.").
[32] *Friel*, 2014 WL 1813293, at *1.
[33] *Id.*

transported them in the truck in anticipation of the pallet stop."[34] The *Friel* Court therefore held: "The injury was in no way caused by [the] use or operation of the motor vehicle, except as a stationary platform from which product was being unloaded. The injury did not occur by virtue of the inherent nature of using a motor vehicle."[35]

11. In contrast, the Delaware Supreme Court found that the vehicle was an active accessory, not merely the situs of the injury, in *State Farm Mutual Auto. Insurance Co. v. Buckingham*.[36] In *Buckingham*, the plaintiff's earlier driving allegedly kicked up rocks, hitting another driver's vehicle and provoking that driver to attack the plaintiff.[37] The *Buckingham* Court held that the plaintiff's vehicle was "not simply the situs of the attack rather, it was an 'active accessory' in the incident provoking the attack that caused [the plaintiff's] injuries."[38]

12. Similarly, the Delaware Supreme Court concluded the vehicle in *Kelty* was an active accessory in causing the plaintiff's injuries.[39] In *Kelty*, the plaintiff was trimming tree branches and using a truck to pull away falling branches to avoid hitting power lines. He tied one end of a rope to a branch and the other end to the truck, which was operated by someone else. While the plaintiff was in a tree

---

[34] *Id.* at *4.
[35] *Id.* at *5 (citing *Kelty*, 73 A.3d at 931 n.29).
[36] 919 A.2d 111, 1114 (Del. 2007).
[37] *Id.*
[38] *Id.*
[39] *Kelty*, 73 A.3d at 933.

cutting a branch, the person in the truck accelerated, causing the rope to snap and the branch to recoil, break from the tree, and strike the power line, which knocked the plaintiff from the tree.[40] The *Kelty* Court held that, unlike the vehicles in other cases (e.g., *Sanchez*[41]) that "had a negligible impact on the events" causing the plaintiffs' injuries, the force exerted by the truck on the rope and branch led to the plaintiff's injuries, and therefore the truck was an active accessory in causing the plaintiff's injuries.[42]

13.    Based on Delaware law and the record, the DART bus was not an active accessory in causing Jones's injuries. Jones injured himself when the air hose, which was attached to the vacuum, became entangled on the reel, also attached to the vacuum, and jerked him backward. Even if this Court assumes the vacuum only operates when it is connected to the bus, that is not enough under these circumstances to conclude that the bus is more than the mere situs of the injury. In *Friel*, the Court concluded that the plaintiff's injury occurred after the plaintiff hooked the chains to the vehicle.[43] Similarly, Jones's injuries did not occur until after he attached the vacuum, a separate unit, to the bus. Nevertheless,

---

[40] *Id.* at 928.

[41] *Sanchez*, 886 A.2d 1278; *see also Campbell v. State Farm Mut. Auto. Ins. Co.*, 12 A.3d 1137 (Del. 2011) (denying the plaintiff's claim for PIP benefits because her injury was caused by a closing garage door and: "The fact that a device inside a vehicle was used to close the garage door, which had been opened by a button on a wall, does not transform the incident into an 'automobile accident.'").

[42] *Kelty*, 73 A.3d at 933.

[43] *Friel*, 2014 WL 1813293, at *4.

nothing relating to the vacuum's connection to the bus caused Jones's injuries. As in *Sanchez*, the vehicle had nothing more than a negligible effect on the events.[44]

14.     In addition, Jones's arguments regarding leaving the rear door open or the bus running in order to operate the vacuum have no merit. Leaving the bus's door open has no relation to Jones's injuries, which were caused by the vacuum's air hose getting stuck on its reel, all of which are contained on the vacuum unit. The bus is more akin to the vehicles in *Sanchez* and *Friel* than those in *Buckingham* and *Kelty*. Had Jones been standing on the ground next to the bus while pulling on the air hose, the injury still would have occurred because the bus was a stationary platform on which Jones was pulling the vacuum hose. Jones's injuries were in no way caused by the use or operation of the bus, and therefore the bus was the mere situs of the injuries.

For the foregoing reasons, the Court of Common Pleas' September 30, 2015 decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:     Douglas T. Walsh, Esquire
        Gary S. Nitsche, Esquire

---

[44] *Sanchez*, 886 A.2d 1278; *see also Kelty*, 73 A.3d at 933 ("In contrast, the vehicles in *Sanchez* and *Campbell* had a negligible impact on the events that caused the respective plaintiffs' injuries.").

10